ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. EDWARDS.†

(Court of Civil Appeals of Texas. Jan. 7, 1911. Rehearing Denied Feb. 11, 1911.)

1. RAILROADS (§ 305*)—OPERATION OF TRAINS —CARE REQUIRED.

Where trainmen discover at a private crossing persons leading stock which is becoming frightened at the train, they must refrain from sounding the whistle when it is discovered that it will probably cause injury, unless it is necessary to preserve the train or prevent damage to some person.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 968–971; Dec. Dig. § 305.*]

2. RAILROADS (§ 350*)—OPERATION OF TRAINS —CARE REQUIRED.

Whether trainmen discovered the peril of a person leading an animal through the gate of a private farm crossing in time to refrain from sounding the whistle and frightening the animal, causing injury to the person, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1155; Dec. Dig. § 350.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by George Edwards against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

---

E. B. Perkins and Templeton, Craddock, Crosby & Dinsmore, for appellant. Evans & Carpenter, for appellee.

RAINEY, C. J. This suit was brought by George Edwards against the railway company to recover damages for personal injuries to his wife, alleged to have been sustained by her by reason of being jumped against and knocked down by a cow she was leading becoming frightened at the blowing of the whistle of a passing train of the defendant at a private crossing over defendant's track, inside the inclosure of a farm on which plaintiff lived. Defendant pleaded the general issue, and specially that the train was properly operated and in the usual manner; that plaintiff's wife knew that the train was coming before she reached the gate, that leads to the crossing, and after going through said gate had ample time to have reached a place of safety; that she knew how trains were usually operated at said place; and that she assumed the risk and was guilty of contributory negligence. A trial resulted in a verdict and judgment for plaintiff, from which the railway company appeals.

The court gave the following charge, viz.: "Now, if you believe from the preponderance of the evidence that the place where it was the duty of the railway company to sound its road crossing signal was west of said crossing more than 100 yards when trains were traveling in a western direction on said road, and if you find that while plaintiff's wife was standing on the inside of the right of way holding a cow, with a rope, waiting for the train to pass, the agents and servants of the defendant in charge of and operating a freight train sounded the whistle when the engine was on said private crossing, and if you find that said cow took fright at the sound of said whistle and jumped against plaintiff's wife, and she was thereby injured in any or all the ways and parts of her body as alleged and set forth in the original petition and in the trial amendment; and if you further find that the use of said crossing by persons on said farm had existed so long and with such frequency, if it did, that the agents and servants in charge of and operating the defendant's freight trains and the one in question, knew that persons might reasonably be expected to be on or about said crossing, intending to use the same in crossing, at any time during the day; and if you further find that the agents and servants in charge of said train, in sounding said whistle on said crossing, if they did, were guilty of 'negligence' under the circumstances as that term is defined in the first paragraph of this charge, and that such negligence, if any, was the proximate cause of plaintiff's wife's injuries, if any—then you will find for the plaintiff." This charge is assigned as error, and among the objections thereto appellant urges the following: "The said charge is erroneous in that the same directs a verdict for the plaintiff without reference to whether the operatives of the engine knew of the presence of plaintiff's wife near the crossing in a perilous situation and without reference to whether in the exercise of ordinary care they would have been keeping a lookout for persons situated as she was and would have discovered her in time to have avoided the accident and when the operatives were under no duty to keep a lookout for a person situated as she was."

Plaintiff's wife testified, in effect, that said crossing had been used frequently and for a long time by persons on the farm; that persons might reasonably be expected to be on or about the crossing, intending to use it; that the track was fenced, with gates on either side, and the right of way was about 100 feet wide; that she was leading a cow intending to cross the track to give her water; that when she approached the gate she heard a train, but paid no attention to it. She led the cow through the gate, and just as she reached the inside thereof the train passed and sounded the whistle at the crossing, which frightened the cow, causing her to jump against plaintiff's wife, injuring her.

The court's charge is subject to the criticism of appellant, in that it authorizes a recovery if the jury believed from the evidence that such crossing had been used by persons on the farm with such frequency and for such a length of time as that defendant knew persons might reasonably be expected to be on or about the crossing. In other words, the import of the charge is that defendant owed the plaintiff's wife the duty to use care in keeping a lookout at said point to discover her situation, and to avoid frightening her cow and preventing injury. This is not a correct principle of law. While, under such circumstances, it was the duty of the servants of the railway company to keep a lookout for persons intending to use the crossing to prevent a collision with them, they owed no such duty to keep a lookout to avoid the frightening of stock. Their duty was to run their trains at such place without making unusual noises. If they discover persons driving teams or leading stock, and they discover the stock is becoming frightened at the train, they must refrain as much as possible from making any noise that is calculated to frighten the stock. The sounding of the whistle of an engine is required by law on certain occasions, yet this should be refrained from to prevent the frightening of stock, when it is discovered that stock will become frightened and probably do injury, unless the sounding is necessary for the preservation of the train or to prevent injury to some person.

The rule applicable to keeping a lookout in such a case as this is laid down in Railway Co. v. Boesch (Sup.) 126 S. W. 8, and in

Hargis v. Railway Co., 75 Tex. 19, 12 S. W. 953. In the Boesch Case, where a team was frightened by a train at a street crossing in a town, it is said: "It is the right of the servants of a railroad company to move their trains with usual and necessary noises, without keeping a lookout for frightened teams along the track. It was so held in the case of Hargis v. Railway Co., 75 Tex. 19, 12 S. W. 953. But where they undertake to make an unusual and unnecessary noise at a crossing of a public road, or street, they should exercise circumspection, and see that there are no teams in position to be frightened by such unusual sounds."

Whether or not the operatives of the train saw the situation of plaintiff's wife in time to refrain from sounding the whistle, or discovered her peril in time so to do, was a question for the jury. The evidence fails to show that her situation was discovered by the engineer; but there was evidence that the fireman saw her, but whether in time to inform the engineer to prevent the sounding of the whistle was a question for the jury's determination. Railway Co. v. Boesch, supra.

Several special charges requested by the appellant were refused by the court. From what we have said, we deem it unnecessary to discuss them, as on another trial the court will be governed by this decision, and such charges given or omitted as may be required by the evidence given on the trial.

For the error in the charge, as indicated, the judgment is reversed, and the cause remanded.