## McMILLAN v. FREEMAN.

(Court of Civil Appeals of Texas. Austin. May 20, 1911. Rehearing Denied June 14, 1911.)

1. RAILROADS (§ 401*)—OPERATION OF TRAINS —FRIGHTENING HORSES ON PUBLIC ROADS— LIABILITY—INSTRUCTIONS.

Where, in an action for injuries to a traveler caused by his team becoming frightened by a train, the court charged that if the engineer, after seeing the traveler, negligently sounded the whistle, though he had reasonable grounds for belief that the same would probably frighten the team, and the blowing of the whistle frightened the team, causing the injury complained of, plaintiff could recover, a charge that, if the engineer suspended so far as he could consistent with his other duties the operation and noise of the train after seeing that the team was about to become frightened, there could be no recovery, was not erroneous.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1382–1390; Dec. Dig. § 401.*]

2. RAILROADS (§ 360*)—OPERATION OF TRAINS —LIABILITY.

A railroad company need not keep a lookout for persons driving in the highway adjacent to the track to prevent frightening teams thereon, but need only operate its trains without any unusual or unnecessary noise; and, where trainmen become aware that teams are about to become frightened, they must refrain from making any unnecessary noise that will likely do so.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1241–1244; Dec. Dig. § 360.*]

3. APPEAL AND ERROR (§ 882*) — RIGHT TO COMPLAIN — FRIGHTENING TEAMS — LIABILITY—INSTRUCTIONS.

A plaintiff seeking to recover from a railroad company on the theory that the trainmen, after seeing his wife driving a team on the highway adjacent to the track and realizing her danger, began to blow and continued to blow a whistle until the train had passed her, thereby frightening her team and causing the injury complained of, may not complain of a charge as to discovered peril.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

Appeal from District Court, Montgomery County; L. B. Hightower, Judge.

Action by R. T. McMillan against T. J. Freeman, Receiver. From a judgment for defendant, plaintiff appeals. Affirmed.

Dean, Humphrey & Powell and J. T. Rucks, for appellant. King & Morris, for appellee.

RICE, J. The record discloses that on the 28th day of October, 1909, plaintiff's wife was driving a two-horse team in a southerly direction along the public road leading from her home to the town of Conroe, which ran near to and parallel with the railroad track, along either side of which public road fences were extended, forming a lane. Just as she was approaching the town, a freight train starting north passed her, which she claims frightened her horses by blowing its whistle, rendering them unmanageable, and on account of which she sprang from the

wagon to the ground, receiving the injuries which form the basis of this suit. It is alleged by appellant that the servants of appellee operating said train negligently and needlessly, while in full view of his wife, commenced to blow the whistle of the engine, and continued to do so until it passed her, with full knowledge of the fact that such conduct would probably result in frightening said team, and thereby causing them to become unmanageable and result in seriously injuring his wife, hemmed in as they were by the wire fencing on either side. Appellee relied upon a general denial and plea of contributory negligence. The trial resulted in a verdict for appellee, and judgment was entered in accordance therewith, and this appeal is prosecuted to reverse same.

The facts on the part of appellant sustain the allegations of the petition, showing that the engineer of the company, while in full view of plaintiff's wife, and with the knowledge that said conduct would likely result in frightening her team, commenced to blow the whistle, and continued blowing same until after the train passed her; that the horses became frightened, the larger one knocking the smaller one against the wire fence at the first blast and at the second blast the bridle came off, rendering the team unmanageable, and, to save herself from imminent danger, she sprang to the ground, and was injured, in part, as alleged in her petition; while, on the other hand, it appeared from the evidence of the defendant that the engineer and operatives of the train did not see her until after she had jumped from the wagon and was standing on the ground holding the horses, whereupon, anticipating from their action that they might become frightened, he cut off the steam and rolled by her. He denied that he blew the whistle after seeing her, in which he was corroborated by others of the crew, stating that, if the whistle was blown at all, it was just as the rear car was leaving the switch and for the purpose of answering the signal of the crew that they had cleared the switch and were ready to go, and before he saw plaintiff's wife.

The court charged the jury to the effect that if, while said freight train was passing plaintiff's wife, the engineer, after seeing her in the road, carelessly and negligently caused the whistle of the locomotive of said train to blow, and continued to blow the same in close proximity to plaintiff's wife, and that said engineer in charge of said train knew, or had reasonable ground to believe, that the blowing of said whistle would probably frighten the team that being driven by plaintiff's wife, and that the blowing of said whistle caused said team to become frightened and unmanageable, and that plaintiff's wife was unable to con-

trol them, and, believing her life was in danger, thought it necessary to jump from the wagon and did so, and was injured, and that the blowing of said whistle was the proximate cause of her injury, then to return a verdict in favor of appellant. But if the jury should find that the engineer did not know that the plaintiff's wife was in said road near said track at the time he sounded the whistle of said locomotive, if they should find that he did sound said whistle, then they should return a verdict for the defendant. The above charge was prepared by counsel for appellant and given at their instance, as shown by the record.

[1] At the instance of appellee the court gave special charge No. 5, which forms the basis of the first assignment, to the effect that if the jury believed that the engineer suspended, so far as he could, consistent with his other duties, the operation or noise of the train after he saw that the team was about to become frightened, if he did see that it was about to become so, then it was their duty to return a verdict for the defendant, without regard to the extent of the fright or the extent of the alleged injury. This charge, we think, when construed in connection with the main charge, as it should be, is not subject to the criticism of appellant, because it is clear that the jury were authorized under the main charge to find for the plaintiff in the event that, after seeing his wife and appreciating her danger, the engineer began to blow and continued to blow the whistle, frightening the team and resulting in her injury, and the special charge complained of only justifies a finding for defendant upon the theory that he did all in his power to suspend such noise after he saw the team was about to become frightened. If he had blown the whistle before he saw the plaintiff's wife, or if the same had been necessarily blown after seeing her, or after he probably could have seen her, but before the horses evinced any fright, and after seeing that they were likely to become frightened, he then desisted and did all in his power consistent with his duties to lessen said noise and prevent the injury, we do not think that the plaintiff would be entitled to recover. Mr. Elliott in his work on Railways, § 1254, says: "A railroad company is not liable for injury resulting from horses becoming frightened upon a highway at the mere sight of its trains or the noises necessarily incident to the running of trains and the operation of the road."

[2] We think it is unquestionably the law of this state that it is not the duty of a railway company to keep a lookout for persons traveling along a highway adjacent to its track for the purpose of preventing frightening animals driven by them, but are only required to operate their trains without unusual or unnecessary noise, and, in case they become aware that the animals are about to become frightened, then to re-

frain from making any unnecessary noises that would likely do so. In discussing this subject in Hargis v. Railway, 75 Tex. 19, 12 S. W. 953, the court says: "Upon this assignment it is impliedly assumed in the propositions in appellant's brief that the defendant was liable, although its employés did not know, and did not have reason to believe, that the noise would frighten the mules, and that it was the duty of the company's servants to watch for teams near the track, and so to operate the engine as not to frighten them. We do not understand that the company or its servants owed to persons near its tracks any such duty. It was the duty of the company in running its trains to keep a lookout along its track so as not to injure persons who may be found thereon, at least at public crossings. But further than this, in our opinion, the duty does not extend.

In Gulf, Colorado & Santa Fé Railway Co. v. Hord, 39 Tex. Civ. App. 322, 87 S. W. 850, Justice Fly, commenting on the case of Hargis v. Railway, supra, says: "The injury in that case took place at a point near appellant's depot where the injured person had a perfect right to be. There can be no doubt, as stated in that case, that if a team shows evidence of becoming frightened, and that fact is made apparent to those operating the train, noises causing the fright should be suspended so far as can be done consistently with other duties, but no appellate court has gone so far as to hold that a railroad company will be negligent if by the exercise of ordinary care it could have seen a horse that afterwards became frightened and hurt someone. It is not the duty of a railway company to keep watch for people near its track in vehicles, and, in case it be shown that such a person was seen, it did not devolve on it to cease its work until such person should move on, or he had been informed that cars would be moved or steam emitted or the whistle sounded. Speaking as to the rule in such cases, it was said by the Court of Civil Appeals of the Fifth District, in the case of O'Dair v. Railway [14 Tex. Civ. App. 539], 38 S. W. 242: 'It may be that, if the operatives in charge of an engine see a horse attached to a vehicle near the track becoming frightened from the noise of the engine, it would be negligence not to desist from making the noise, but in such a case it would be necessary to show that the operatives were apprised of the perilous situation before that duty would rest upon them.'" Justice Fly in the same case further says: "In most of the Texas cases on the subject the liability of the railway company when horses are frightened and someone injured is made to hinge upon the knowledge of the employés in charge of the train that the horses were becoming frightened at noises made by the train, and no effort was made to stop the noises"—citing Railway v. Box, 81 Tex. 670,

17 S. W. 375; Railway v. Carruth, 50 S. W. 1036; Railway v. Belt, 24 Tex. Civ. App. 281, 59 S. W. 607; Railway v. Lankford, 9 Tex. Civ. App. 593, 29 S. W. 933. See also, T. & P. Ry. Co. v. Hemphill, 125 S. W. 340; Railway v. Street's Adm'x, 139 Ky. 186, 129 S. W. 570. For which reason this assignment is overruled.

[3] At the instance of the defendant, the court gave the following charge, which is complained of by the second assignment of error, to wit: "The only ground upon which plaintiff seeks to recover is what the law terms 'discovered peril,' by which is meant that the engineer in charge of the train discovered the team driven by plaintiff's wife, and saw that the team was frightened, and realized the danger following such fright to the plaintiff's wife, and after discovering and realizing this entire situation that the engineer operating said engine then failed to exercise ordinary care to prevent said injury, and, unless you so believe, it is your duty to return a verdict for the defendant, without regard to the extent of the fright to the team, or the injury to the plaintiff's wife."

In view of the fact that the plaintiff predicated his right to recover in his pleading upon the theory that defendant's employés, after seeing his wife, and realizing her danger, began to blow and continued to blow the whistle until the train had passed her, thereby frightening the team and causing the injury, and also in view of the charge of the court which was prepared by counsel for appellant directly presenting this phase of the case to the jury, we think that appellant is precluded from urging the objection that he did not seek to recover on the ground of discovered peril.

After due consideration, the remaining assignments are overruled. Finding no error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.